IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Joshua Salvador | ) | Case No. 08-28867 |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Melanie Dimuzio ("Dimuzio") to convert the Chapter 11 case of debtor, Joshua Salvador (the "Debtor"), to a case under Chapter 7 or to dismiss the case and bar the debtor from refilling for 180 days. Dimuzio, the Debtor's largest creditor, requests this conversion or dismissal, *inter alia*, because of the Debtor's failure to meet the good faith standard. For the reasons stated below, the Debtor's Chapter 11 case is converted to a case under Chapter 7 for lack of good faith in the filing of the bankruptcy petition.

## BACKGROUND

The important facts in this case arise out of a state court action between the Debtor and Dimuzio. In 2003, Dimuzio brought a medical malpractice action against the Debtor for the death of her husband in the Circuit Court of Cook County, Illinois. In August, 2006, the Circuit Court entered a judgment in favor of Dimuzio for $1,800,000. Registration of this judgment provided Dimuzio with a secured lien on the property of the Debtor. The specific property encumbered by Dimuzio's lien is a retirement annuity with a total value of $1,000,000 that would net the estate $6,000 monthly. The lien against the retirement annuity prevents the Debtor from receiving those funds from the annuity and, therefore, the Debtor cannot repay his debts.

1

The state court action and subsequent lien on the Debtor's retirement annuity led the Debtor to file for Chapter 11 protection in the Southern District of Florida (the "Florida Chapter 11") in April, 2007. The Florida Chapter 11 was dismissed on January 8, 2008 and the Debtor was barred from refiling for 180 days due to his failure to file his monthly reports and his failure to file a plan.

Throughout the duration of the Florida Chapter 11, the parties had an ongoing appeal of the Illinois Court judgment; that appeal continues through the current Chapter 11 before the Court now. The lack of a decision by the Illinois Appellate Court on the Debtor's appeal of the judgment led the Debtor to file again for protection under Chapter 11 in October, 2008; this time the Debtor sought protection in this Court.

In the instant case, the Debtor has filed the required monthly reports. Those monthly reports, however, show a diminution of the estate and a negative cash balance. The debtor has also filed a plan of reorganization in this case. The plan, though, filed roughly a year after the start of the case, proposes merely a liquidation of the estate. In the proposed plan, the Debtor proposes a period of 18 months to sell off the property of the estate or a conversion to Chapter 7.

## LEGAL DISCUSSION

Dimuzio seeks to dismiss or convert the Debtor's bankruptcy case for cause under § 1112(b) of the Bankruptcy Code. She argues, *inter alia*, that the debtor filed his chapter 11 petition in bad faith. The bad faith accusations stem from Dimuzio's assertion that the Debtor does not have a basis grounded in the Bankruptcy Code to file this case; the Debtor's failure to file a confirmable plan within the statutory period; and the Debtor's diminution of the assets of the estate. In response, the Debtor asserts that Dimuzio fails to consider the totality of the circumstances when making such accusations. The Debtor suggests that resolution of the state

court appeal is the missing link to a completed plan and Dimuzio has failed to consider that in her motion to dismiss.

*a. The Good Faith Standard for a Motion to Dismiss or Convert under § 1112(b).*

Although it does not appear among the enumerated grounds for dismissal or conversion in § 1112(b) of the Bankruptcy Code, the Seventh Circuit has stated that when filing a case under Chapter 11, "[i]t is generally recognized that 'good faith' is a threshold prerequisite to securing Chapter 11 relief and that the lack of such good faith constitutes 'cause,' sufficient for dismissal [or conversion] under 11 U.S.C. § 1112(b)." *In re Madison Hotel Assocs.* 749 F.2d 410, 426 (7th Cir. 1984). The Seventh Circuit requires, however, that similar to the other provisions of § 1112(b), that the movant prove by a preponderance of the evidence that the filing was done in bad faith. *Id.*

Although the burden rests on the movant, the court cannot consider a motion to convert or dismiss in a vacuum but must look to the totality of the circumstances by examining both objective and subjective factors in order to make a determination of bad faith in filing a bankruptcy case. *See In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 750 (Bankr. N.D. Ill. 2004). One factor weighing in favor of a finding of bad faith is that the "debtor has [not] presented a legitimate reorganizational objective within the scope of the Bankruptcy Code or rather has presented 'tactical reasons unrelated to reorganization'" *Id.* Judge Wedoff, in *In re Guaranteed Retirement*, 112 B.R. 263 (Bankr. N.D. Ill. 1990), expressed another factor as "the need for a bankruptcy case in light of the debtor's financial condition and the type of assets available for satisfying judgments." *Id.* The Court will discuss both in turn.

*b. Application of the Good Faith Standard to the Instant Case.*

3

Considering the totality of the circumstances in the instant case, the Debtor's Chapter 11 case does not present a legitimate reorganizational objective. In requesting his fourth extension of the exclusivity period to file a plan of reorganization, the Debtor indicates one factor for needing an extension, the same factor that existed at the beginning of this case, as well as in the Debtor's previous case: the need for a decision by the Illinois Appellate Court. This factor illuminates the Debtor's primary objective in filing this case: to put a hold on any collection efforts until the Illinois Appellate Court issues a decision, essentially, using the bankruptcy court as an appeals bond.

The Court previously ruled on a debtor's use of the bankruptcy court, and more importantly the automatic stay, as a substitute for an appeals bond, determining, "a Chapter 11 filing . . . may be used to replace an appeal bond if the judgment against the debtor is so large that the debtor faces severe disruption of his business if enforcement of the judgment is not stayed." *In re Liptak*, 304 B.R. 820, 830 (Bankr. N.D. Ill. 2004). In clarifying that statement, this Court announced the test as:

> whether the debtor has a business justification for thwarting a judgment creditor's collection activity and forcing them to accept other (possibly reduced) future payment rights under a reorganization plan in lieu of assets crucial to operating the business. This justification does not exist if the debtor could have satisfied a judgment with funds and savings that were not being used to operate a business.

*Id.*

The Debtor's retirement annuity is not a "business asset," neither in the traditional sense of machinery, goods or services, nor in the analysis appropriate here. The asset does not fit Judge Wedoff's calculus for the necessity of a Chapter 11 plan. *In re Guaranteed Retirement*, 112 B.R. 263 (Bankr. N.D. Ill. 1990). The Debtor was not using the retirement funds to operate a business or to support some other ongoing concern. The Debtor's only justification for the use of the

4

retirement annuity in this case and for staying in Chapter 11—outside of the pending determination by the Illinois Appellate Court—is that more parties could get paid from the retirement fund. Such a justification is not supported by the Code.

As for the Debtor's actual business asset, the stay has already been lifted on the 7000 W. North Avenue property. The Debtor claims that the property will garner $100,000 for the unsecured creditors but that same gain could be achieved in Chapter 7. The property does not benefit the estate in a balancing of the factors which determine good or bad faith.

The Court also notes as an important factor in this case, weighing in favor of a finding of bad faith on the part of the Debtor, is the Debtor's filed plan of reorganization. Implicit in the Debtor's plan is a hold on the implementation of the plan until there is a determination by the Illinois Appellate Court. The plan would not classify Dimuzio's claim until the State Court issued a decision which would ultimately decide the secured status of Dimuzio's claim. After assigning Dimuzio to a class, the plan would then liquidate the estate over an 18 month period. This would allow the Debtor to attempt to sell his diminishing assets and to convert the case to Chapter 7 if the Debtor could not liquidate the estate on his own. No benefit to the creditors is served by allowing the Debtor to wait in Chapter 11 until there is a decision by the Appellate Court to then liquidate his assets.

The court can find no valid reason for such a delay in liquidating the estate and, therefore, orders the conversion of the Debtor's case to one under Chapter 7.

**DATE: November 10, 2009**                                **ENTERED:**

                                                            J. P. Cox   *Jacqueline P. Cox*
                                                            _____
                                                            **Judge Jacqueline P. Cox**
                                                            **United States Bankruptcy Judge**

5